IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD RAYBOURNE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 3205 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| CIGNA LIFE INSURANCE COMPANY OF NEW YORK, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this action filed pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1132(a)(1)(b)), plaintiff Edward Raybourne seeks long term disability benefits from the plan administrator of a long term disability income protection benefit plan (the "Plan") sponsored by plaintiff's former employer, L-3 Communications Holdings, Inc. ("L-3"). Both parties have filed motions for summary judgment, and there is no dispute as to plaintiff's exhaustion of his administrative remedies and the identity of the parties. For the reasons discussed below, the court denies plaintiff's motion for summary judgment and grants defendant's motion.

## FACTS

Plaintiff worked as a quality control manager for L-3 from 1980 until June 21, 2003, when he became unable to work due to what he claims was osteoarthritis of the right foot, severe nerve entrapment, severe degenerative arthritis of the right first metatarsal phalangeal joint of the right foot and chronic regional pain syndrome. Plaintiff had a total of four surgeries on his foot from 2003 through March 2005, which apparently were unsuccessful in relieving his pain.

On March 19, 2005, Dr. Ronald Sage, the second of two podiatrists who had performed surgery on plaintiff's foot, in connection with a social security disability claim sponsored by defendant, opined that plaintiff suffered from osteoarthritis, right foot chronic regional pain syndrome and right foot plantar nerve entrapment, noting that plaintiff's symptoms included severe pain, the inability to tolerate prolonged walking or standing, and the ability to stand or walk as less than one hour in an eight hour day. Dr. Sage also noted that plaintiff used a cane and was taking Vicodin and other medication for his pain, which would constantly interfere with his attention and concentration. In subsequent assessments prepared for defendant later in 2005, Dr. Sage concluded that plaintiff was unable to climb, balance, stoop, kneel, crouch, crawl, reach or walk, and was incapable of performing any work for an undetermined period of time. Dr. Sage also opined that plaintiff could sit, stand or walk for less than 2.5 hours in an eight hour day and could occasionally lift or carry ten pounds of weight. Dr. Sage concluded that plaintiff continued to suffer from disabling foot pain, was "homebound," continued to take pain medication and was indefinitely disabled.

Under the terms of the Plan, after six months of short term disability payments plaintiff was entitled to receive long term disability income protection for two years after becoming "totally disabled." This term was defined in the Plan as being "unable to perform all of the material duties of his or her Regular Occupation" for the first 24 months, and thereafter as being "unable to perform all the material duties of <u>any</u> occupation for which he or she may reasonably become qualified based on [his or her] education, training or experience." (Emphasis added.) Thus, plaintiff was paid his full disability benefits for the two years following December 20, 2003, six months after the date he left his employment on June 21, 2003. Indeed, plaintiff was

paid full benefits until March 1, 2006, at which time CIGNA terminated those benefits.[1]

Defendant had notified plaintiff in June 2005, that beginning December 20, 2005 (two years from the date on which his long term disability benefits began) he would be qualified for further long term benefits only if he was disabled from "all" occupations for which he was qualified. In December 2005, defendant referred plaintiff for an independent medical exam because it had concluded that the evidence in plaintiff's file did not definitively resolve whether he met the more stringent definition of disability that was to take effect on December 20 of that year. In January 2006, an outside physician retained by defendant, Dr. J. S. Player, M.D., based on a review of plaintiff's records and a physical examination, concluded that plaintiff was engaging in "symptom magnification." Dr. Player noted that plaintiff's first podiatrist, Dr. Adelstein, had found that plaintiff's complaints were disproportionate to his symptoms. Dr. Player diagnosed plaintiff with degenerative joint disease of the right first metatarsal phalangeal joint, and other problems resulting from the fusion surgery and the prior treatment and conditions of plaintiff's right foot. Dr. Player opined that plaintiff could return to his past job with L-3, although he agreed that plaintiff's complaints were consistent with his objective findings regarding the problems with plaintiff's right foot.

In February 2006, defendant asked Dr. Sage to review Dr. Player's findings. Dr. Sage agreed with Dr. Player's physical examination conclusions, but disagreed that plaintiff could return to work as a quality engineer because of the extreme amount of pain plaintiff was experiencing. Also in February 2006, an expert hired by defendant conducted a transferable

---

[1] Defendant has filed a counterclaim for overpayment of plaintiff's initial short term disability benefits based on a miscalculation of his earnings.

skills analysis and identified six occupations that plaintiff could perform in the Chicago market. On March 1, 2006 (the date on which plaintiff's benefits were terminated), defendant's management concluded that the evidence failed to demonstrate that plaintiff was disabled from performing "any" occupation for which he was qualified, noting, (a) Dr. Player's conclusion that plaintiff could perform sedentary to light duty work, (b) Dr. Sage had not clarified how degenerative joint disease precluded plaintiff from working, and (c) the six occupations that the transferable skills analysis had identified.

On April 13, 2006, plaintiff filed his first administrative appeal with defendant, submitting a report by Dr. Sage which concluded that plaintiff suffered from chronic regional pain syndrome, osteoarthritis and nueritis, rendering plaintiff incapable of performing any occupation requiring walking or standing or focusing on sedentary activity. Plaintiff also included a social security disability award of benefits based upon a finding of permanent disability. Defendant referred plaintiff's first appeal to an in-house physician, Dr. R. Norton Hall, M.D., who reviewed the records without conducting any physical examination of plaintiff. Based upon Dr. Hall's conclusion that the records did not support a claim that plaintiff could not perform "any" work, defendant denied plaintiff's appeal. In November 2006, plaintiff retained counsel and filed a second appeal in which he argued that Dr. Player's opinion should be disregarded because he failed to consider plaintiff's pain or the side effects of the pain medicine (Norco) that plaintiff had been taking. In the second appeal, plaintiff also submitted for the first time Dr. Sage's record of plaintiff's fourth surgery in which Dr. Sage had removed the hardware surrounding the earlier fusion of plaintiff's right great toe, and included Dr. Sage's opinion that plaintiff's severe pain prevented him from performing any occupation. Also included in the

4

second appeal was the May 2006, opinion from a Social Security Administrative Law Judge finding that plaintiff was permanently disabled. Defendant referred the second appeal to another in-house physician, Dr. Paul Seiferth, M.D., who concluded that Dr. Sage's finding that plaintiff could not perform any occupation was not based on sufficient medical evidence. On May 29, 2007, defendant denied plaintiff's second appeal. This lawsuit was filed soon thereafter.

## DISCUSSION

As noted above, both parties have filed motions for summary judgment.[2] Summary judgment is appropriate if the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists only when a reasonable jury could find for the opposing party based on the record as a whole. Moore v. J.P. Hunt Transp., Inc., 221 F.3d 944, 950 (7th Cir. 2000).

Initially, plaintiff claims that defendant's decision to deny his benefits should be reviewed under the "default" de novo standard, arguing that the Plan does not contain discretionary language that would require review under an "arbitrary and capricious" standard as directed by the Supreme Court in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 114-15 (1989). The plaintiff is incorrect. In appointing defendant as the claim fiduciary, the Plan was amended to specifically give defendant "the authority, in its discretion, to interpret the terms of

---

[2]Although plaintiff has requested summary judgment, he suggests that should the court find disputed genuine issues of material facts, the court should apply Fed. R. Civ. P. 52 to "weigh the evidence and enter findings of fact and conclusions of law in plaintiff's favor, citing Diaz v. Prudential Insurance Co. of America, 499 F.3d 640 (7th Cir. 2007). Because the court finds that the arbitrary and capricious standard of review applies in this case, the court will not follow plaintiff's suggestion.

5

the Plan, including the Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." The summary Plan description also includes this grant of discretion. The court thus finds that the policy was amended to grant discretion to defendant, requiring review under the arbitrary and capricious standard.

Under the arbitrary and capricious standard, the court will uphold a claim administrator's decision so long as it is based on a reasoned explanation, grounded in the evidence. <u>Semien v. Life Ins. Co. of North America</u>, 436 F.3d 805, 811-12 (7th Cir. 2006). The claim administrator's decision will be upheld unless it is "downright unreasonable," even if the court would have reached a different conclusion. <u>Davis v. UNUM Life Ins. Co. of America</u>, 444 F.3d 569, 576 (7th Cir. 2006). With these standards in mind, a claim administrator may deny benefits based upon the opinion of an in-house consulting physician who has not personally examined the claimant and who disagrees with the claimants' treating or consulting physician.

In the instant case, defendant argues that application of these principles requires a deference to its decision to deny long term disability benefits to plaintiff, because defendant relied principally on Dr. Player's report in which he conducted a physical examination of plaintiff and reviewed plaintiff's records in concluding that plaintiff was capable of performing work. As noted above, Dr. Player recognized that plaintiff appeared to be comfortable during the examination and able to sit and walk with some limitations. Most importantly, Dr. Player noted, as had Dr. Adelstein, that plaintiff's complaints of severe pain seemed to be magnified based upon the objective medical evidence. Dr. Player concluded to a reasonable degree of medical certainty that plaintiff could perform full time sedentary to light duty occupations, provided that he did not lift, carry or push more than 20 pounds, used a cane, and restricted his

6

walking and stair climbing to less than 2.5 hours a day. Coupled with the transferable skills analysis performed in February 2006, identifying six occupations that plaintiff could perform, as well as two subsequent internal reviews based on the records, defendant argues that it was entitled to conclude, in its discretion, that the evidence did not support plaintiff's claim of inability to perform "any" occupation for which he was qualified.

Although plaintiff raises a number of objections to defendant's consideration of his claim, it is impossible to conclude that defendant did not ultimately consider all of the materials he submitted to support his claim of permanent disability. The court is disturbed, however, by the fact that the Social Security Administration has found that plaintiff's medical condition rendered him functionally incapable of engaging in any work, a conclusion totally at odds with that reached by defendant. This fact is particularly disturbing because Cigna encouraged plaintiff to seek social security disability benefits, provided plaintiff with an advocate for that purpose, and then reaped the benefits of plaintiff's recovery as a result of a coordination of benefits provision in the policy. This same fact scenario led the Seventh Circuit to suggest that the case falls "within the penumbra of the doctrine of judicial estoppel," which prevents a party from winning a suit on one ground and then in further litigation with the same opponent repudiate the ground to win a further victory. Ladd v. IIT Corp., 148 F.3d 753, 756 (7th Cir. 1998).

As in Ladd, the doctrine does not technically apply to the instant case because defendant was not a party to the Social Security Administration proceeding. Nevertheless, the Ladd court indicated that "this sequence casts additional doubt" on the adequacy of the defendant's evaluation of the plaintiff's claim. Id. In Ladd, the court ultimately determined that the denial of

7

benefits was arbitrary and capricious, but only because the "independent evaluator," who did not conduct a physical examination of the plaintiff, failed to give any reasons for disagreeing with previous assessments. Id. at 756 ("If Bertrand had given reasons for disagreeing with the assessments . . . we would have to affirm under the deferential standard.")

In the instant case, unlike in Ladd, Dr. Player conducted a physical examination of plaintiff and documented reasons for his conclusions, which were consistent with at least one of the previous evaluations. Under a de novo standard of review, this court might indeed reach a different conclusion than that reached by defendant. Under the deferential arbitrary and capricious standard of review, however, the court must uphold defendant's decision. That decision's inconsistency with the ruling by the Social Security Administrative Law Judge ("ALJ") may be explained simply by noting that reasonable people can reach different conclusions based on the same record, or by the fact that Dr. Player had more information than the ALJ about plaintiff's condition. The record in this case demonstrates that defendant undertook four separate reviews of plaintiff's claim, including Dr. Player's independent medical examination, the transferable skills analysis and two in-house physician's reviews of the record. This is not a case in which the claim administrator went out of its way to deny a claim. Defendant took plaintiff's claim quite seriously, paid him both short term and long term disability benefits beyond the two years for which he was entitled to them, and thoroughly explained the reasons for its decision. The court simply cannot conclude that that decision was arbitrary and capricious.

For these reasons, the court denies plaintiff's motion and grants defendant's motion for summary judgment.

Finally, defendant has moved for summary judgment on its counterclaim seeking reimbursement for certain overpayments of the initial short term disability benefits. Plaintiff admits that the overpayments were made, but argues that defendant's claim is subject to exhaustion. Although there is little support for plaintiff's argument, there is a more fundamental problem with the counterclaim. The counterclaim itself asserts no basis for this court's jurisdiction. It is a straightforward claim for money damages under the policy and thus does not fall within § 503(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which confers jurisdiction over claims for equitable relief. See Fregeau v. Life Ins. Co. of North America, 490 F. Supp. 2d 928, 929 (and cases cited therein). Unlike in Fregeau, defendant cannot assert an equitable lien over any specific funds, rendering unavailable any assertion of jurisdiction under § 503. It is possible that jurisdiction could be asserted under 28 U.S.C. § 1367(a), but as noted above, defendant has not invoked any grounds for jurisdiction and "jurisdiction may not be sustained as a theory that the plaintiff has not advanced." Leipzig v. AIG Life Ins. Co., 362 F.3d 406, 410 (7th Cir. 2004). Accordingly, the court dismisses defendant's counterclaim without prejudice for lack of jurisdiction.

**CONCLUSION**

For the reasons discussed above, the court grants defendant's motion for summary judgment, denies plaintiff's motion for summary judgment, and dismisses defendant's counterclaim for lack of jurisdiction.[3]

**ENTER:** **June 24, 2008**

_____
**Robert W. Gettleman**
**United States District Judge**

---

[3]After this opinion was prepared, but prior to issuance, the Supreme Court issued Metlife v. Glenn, __ U.S. ___, ___ S.Ct. ___, 2008 WL 2444796 (2008), which involved similar facts and legal issues. Nothing in Metlife has altered this court's opinion in the instant case.